Mr. Ryan, you're certainly welcome to sit at council today by the way. We've come before you today on a very serious matter of civil rights violation. In this particular case, the evidence is that there was an opening for a bassoon player in the City of Honolulu Municipal Band. The City of Honolulu Municipal Band is called the Royal Hawaiian Band after the original band created by King Kalakaua III in 1834. And curiously enough, the historical record establishes that when King Kalakaua III established his Royal Hawaiian Band, he hired two African American musicians to be the leaders and several other African American musicians to play in that band. And then in 1845, King Kalakaua hired another African American leader of the Royal Hawaiian Band. Now, here we are in 2000, and it happens that Mr. Harrell was retiring after playing bassoon in the United States Army Band for 20 years. He had played part-time with the Royal Hawaiian Band, but curiously enough, he was never allowed to practice with them. They would call him because he was good enough to just read the music and play, based upon his over 20 years of experience, but they never allowed him to rehearse. And so what is the basis upon which you think we can overturn the jury's decision? Because the raters of the musicians rated Mr. Harrell qualified. If you look at the rating sheet, which is D-18 in the defendant's record, and there's other, that's the summary sheet. It shows that Well, okay, there were three people that tried out, right? And so the jury did listen to the audition tapes, correct? Right, but we were not allowed to have Mr. Harrell play, actually. Okay, that would be, why would that be relevant, since what you're claiming to have been discriminatory is based on when he tried out, correct? And let's just say, you know, I try out, and I do poorly, and they make a decision, and that's that, but then later, you know, I practice straight for all of that period of time, and now I want to show what I'm capable at that time, but aren't we really stuck with the audition on that particular time? I mean, how, you know, how could someone be said to be discriminatory when, if he plays better at another time? That wasn't before them, right? I mean, what's really at heart is how did everyone play that day, and whether there was discrimination at that time, correct? Well, if you look at the rating sheet, Mr. Harrell was rated qualified. 50 is the cutoff level between, they call it satisfactory, but below 50, you're unqualified, above 50, you're qualified. Mr. Harrell had a 69. The other person had a 72, and another person had an 86. So your argument is, because he was qualified, and the other two people, for whatever reasons, one declined, didn't take the job, that he should have been hired because he was qualified. Is that your argument? Essentially, yes. And the reasons that he was not hired was basically what the trial consisted of, and all of those reasons were subjective. We thought he was nervous. We thought this, that, and the other. But they rated him qualified. After he, after the other two people turned down the job, he was the only qualified person standing. Moreover, there's a context in this, and there's the context of there are no African-American musicians playing in the Royal Hawaiian Band today, and there have not been any African-American musicians in the Royal Hawaiian Band for generations. We thought to bring in some testimony about this. Number one, there was a magazine article that we submitted, written by Mr. Ari Greer. And that talks about the history of the Royal Hawaiian Band, and the fact that the original musicians basically suffered a breach of contract, in the sense that they were supposed to be paid in land, and they never got the land. And so there was a riff there. Was there any testimony from any expert that said that Mr. Harrell played better than the other two? No. There was one expert. He was our expert, and he was the person who had the job and recommended Mr. Harrell for the job. And he testified that all of the musicians were qualified, and that it was discriminatory to say that Mr. Harrell was not qualified and not to hire him. Did he testify as to some of the same things that the Raiders found to be a problem in terms of air leaks, various, what is your... He testified that Mr. Harrell's presentation was very good. He testified that Mr. Harrell's presentation wasn't perfect, but he testified that none of the others were perfect, either. Did he say Mr. Harrell was better than either of the other two that were offered the job? He did not say that. But I don't believe that should be the issue. The issue is there has been a hundred-year pattern of discriminatory employment in the Royal Hawaiian Band, and this qualified military retiree was not hired, even though the other two applicants declined the job, and he was not given the position for subjective reasons which had nothing to do with his actual qualifications. Is there, what is there in the record about why he was not hired once the other two bailed? I asked Mr. Mahi about those questions. And looking on the rating sheet, you see that Mr. Howe was the second-rated person. He was rated with a 72, and Mr. Harrell was rated with a 69. I asked him, well, aren't those very close together? Well, no. Okay. Maybe my question wasn't real clear. Is there the top guy was offered the job, and he declined, and the number two guy was offered the job, and he declined. Yes. So is there that left Mr. Harrell? I was getting to it. Mr. Mahi said, well, we had to cut it off somewhere. You know, there was testimony that after the first two people declined, Mr. Larm, who was the assistant WIN manager, said, well, should we call Mr. Harrell? And Mr. Mahi said, no, we won't call him. And basically he said, no, we won't call him. And is there any indication of why not? Well, basically his testimony. I'm just asking, are we in inference land or are we in testimony land? I don't know. I look at the rating sheet, and they rated him qualified. Well, the problem is we don't have anything in the record that lets us know what the testimony was. We don't have the transcript of the reasons that were given for failure to hire him after the other two declined the job. And that's a critical piece of evidence. Rating sheets aside, that's all by the wayside. Now, if you have one qualified individual left standing, why wasn't that person hired, we don't have anything in the record to let us know what the reason was that was given by the Royal Hawaiian Band leaders to say why he wasn't hired. That's a crucial piece of evidence. Doesn't matter about historical, doesn't matter about the rating sheets. We're beyond that. We're beyond the specific reason why this man wasn't hired after he was the last one standing. Because Mr. Mahi didn't want to hire him. Okay. Where is that in the record? That basically is looking at the, I mean, it's in the transcripts, and all the transcripts are part of the record. That's the problem. Those were not submitted to us. We don't have the transcript of the jury trial. The transcripts were ordered and paid for, and we assume that the court reporters and the district court transports the record to the court. Or certainly ordered and paid for. That's what excerpts are for. I mean, we don't have it physically. Moreover, I mean, that evidence is something that they would present. They were jumping all over. I mean, there was like seven days of testimony. If your claim has been discriminated against, you have to prove that the reason they gave was a pretext for discrimination. So we have to know what was the reason, and then you have to show us why that reason was a pretext. The reason was that Mr. Mahi wanted to cut it off at 69, and he did so for his own arbitrary reasons. Okay, so what you're saying is that even though he was qualified over, what's the number, 60? Fifty. Fifty, all right. Fifty was the cutoff. He then, after the fact, decided to cut it off? He wasn't going to hire him. He changed the rules after the broadcast. Well, is there any, you know, where is there a showing that anyone that passes has to be hired? I mean, passing over 50 allows you to go to the next step. But there's, I mean, frequently in employment situations, you have a lot of people that pass, and then you make a decision about who you want, but it doesn't mean that everyone that passes is going to get a job offer. Right. That depends upon basically who's left standing and who's available. But you have to give a reason why you didn't hire the person, if they're qualified. His reason, basically, was he thought it was too nervous. And those excerpts actually have been provided in the excerpt of the city. And at, well, the rating sheets, number one, contain the reasons. Well, his was the lowest score. And so they thought that his performance, that he was nervous, there were leaks, there were this, that, and the other. And their reason that they gave is that they, even though he got over 50, they didn't think that he was good enough to offer the position to. Isn't that right? I mean, that's the reason they gave. It wasn't a they. It was Mr. Mahi who made the decision. The committee did the rating, and they came up with that. And then after that, Mr. Mahi made the decision. And his decision was not to call Mr. Harrell, even though he was qualified. The reasons, basically, that he was stated were subjective reasons. The objective analysis was that he was more than qualified by getting a 69, which is 19 over 50. Okay. So you want, you basically want us to say that the jury couldn't, the jury had to infer from that that it was for a discriminatory reason? It may have been different if one of the other people accepted the job, but in this particular case, he was the highest qualified person who was ready, willing, and able to accept the position. And he wasn't offered the position. And, moreover, through the motions and limiting that the magistrate judge granted, because we had a visiting judge from Chicago who actually did the trial after the magistrate did the motions and limiting, he prevented us from bringing the whole history of the discriminatory employment policy of the city, because he ruled that it was unfair for us to argue the discriminatory policies that existed 20 years before Mr. Mahi became the director. Excuse me, my tongue is getting thick. But it was as though the court determined that only the individual defendants were before the court, and they ignored the fact that the city defendant was the court, excuse me, was before the court, and the illegal policy practice and custom of the city was relevant, and we should have been able to present all of that history, especially with regard to the difficulties African-American musicians had in the Royal Hawaiian Band and the history of the lack of employment of African-American musicians up to the present time. Because we were prevented from doing that, we were denied a fair trial, and we believe that goes to the Aubrey case, Aubrey and Aubrey v. Johnson. The court let one excerpt in and kept the other out, correct? So you have to show an abuse of discretion, and you're saying that was an abuse of discretion. Yeah. If you look at the excerpt that he let in, it didn't have any of the criticism of the band, but the one that he excluded had the criticism and the fact that the city breached the contract. The city did not pay the original musicians with the land that they were supposed to get. And that was a very serious matter, and it indicated when the discriminatory policy began. We definitely believe that under the National Railroad case, under the Lyons case, even though those discriminatory acts occurred beyond the 300 days, they're relevant to explain the employment policies of the city, and those are relevant to show why Mr. Mahi used subjective reasons to overcome the objective determination that Mr. Harold was qualified to reject his application. And I'll reserve. Okay. Mr. Moran. Thank you, Your Honor. I thought it was my name is John Moran. I'm deputy corporation counsel for the city and county of Honolulu. I thought it was interesting, one of the first comments made by counsel was that he was, part of his case was denied a presentation when Mr. Harold could not play for the jury. And, Your Honor, Judge Callahan, you asked, well, isn't that subjective, perhaps with a note of levity as a retired and very poor. Well, my question was relevance. You know, isn't what's relevant is how you played for your audition as opposed to how you play any other day. That was not what was before the people that make the decision right and grade. And totally subjective, totally subjective issue. And let me ask the court one question. Are you telling me that you do not have the transcripts of the trial? Did I understand that to be the case? Well, you don't really get to ask questions. But what you provide are excerpts of record. We can order from district courts if we choose, but it's also the party's responsibility to provide excerpts of record of what support their arguments. I mean, we can order the record and, in fact, the record that I have ordered the record. But the thing is I don't have to do that is the thing. Parties are supposed to give us whatever we need. But the truth be said, we always get whatever we need in terms of to decide a case. Because we don't go believe everything that attorneys tell us. We don't, you know, parties are given our full consideration and we do whatever we need to do to decide a case. But it is the responsibility of the parties to give us what we need. There were three people who tried out for this job. It was a very specific kind of job. It was a bassoonist. It was a soloist. And Mr. Mahi, in the course of his testimony, said, because the other two didn't take the job and the other two were clearly rated ahead by all three participants of Mr. Harrell, that he was not going to take Mr. Harrell because he didn't basically have confidence. It was a soloist position, a very limited situation, and he wasn't going to hire him. So the reason was he didn't have confidence in Mr. Harrell, even though he had been rated well above qualified. Mr. Mahi did not have confidence in the musicianship of Mr. Harrell to be a soloist as a bassoonist in the Royal Hawaiian Band. That was in the testimony that he gave in court. Mr. Barrett, who was the expert for Mr. Harrell, said that it is a very, very subjective thing as to judging musicianship. But doesn't that make it more likely that you can discriminate on impermissible bases the more subjective it is? I don't believe so. Isn't that what the cases say? That's what the cases say, but I think that a person in this kind of a situation, a soloist, a bassoonist, about which I have absolutely no knowledge, and I suspect that everyone in this courtroom, other than perhaps counsel who listened to the testimony, have very little knowledge of what is required for this very sort of unique instrument. But isn't that the point of having objective rating sheets so that subjectivity doesn't hijack the process? But that process was not hijacked. Three people independently came to the same conclusion. They came to the same batting order at the end of the test, Mr. Ventura, Mr. Howell, Mr. Harrell. And that would be, if we were here trying to decide whether or not one of those two should have been selected over Mr. Harrell, I would understand your point. But with those two having declined the position and you have a qualified person who's still in the running, I have difficulty with just saying I'm not going to hire him because subjectively I don't have confidence in him when he's been rated in the more objective process as being qualified. Well, the court asked the question, which I think is one of the nubs in this case, simply because three people were selected. All three people could play. And if one of them didn't get the job or didn't accept the job, does that mean you have to hire the third person? That was discussed by Judge Aspin, and he said no. You don't have to, but you have to give a reason that's not based on an impermissible category. You can't say I'm not going to hire him, and then if he says you didn't hire me because I'm African-American or female or disabled, then you have to have some reason other than race or the other impermissible category to explain why you didn't get the job. Well, it seems to me a permissible category would be a professional musician, and Mr. Mahi was head of the Royal Hawaiian Band for over 20 years, that he could make a subjective decision that this gentleman did not have the musical skills to participate with the band. I don't think that that's discriminatory. I think that is a decision that gets made by the band director and he was not comfortable with the performance. Were you trial counsel? No, I was not, Your Honor. Okay. So in terms of the arguments that were made, if Mr. Mahi said, okay, I don't have the confidence in him, I don't think, what did the parties, what was argued to the jury? Was the one, he, Mr. Mahi said, I don't have the confidence and I don't think he's good enough to be a soloist, and was the argument made, well, that's just subjective, and the reason he wasn't picked is because he was African-American, and the jury just decided against that, or what were the arguments that were made? The arguments of counsel, of course, are not recorded, so I do not have those, and they're not in the transcript. What the jury did have to consider was what the expert of Mr. Harrell had to say, and I went through the transcript, and he said things like, Matt, he's referring to Mr. Harrell, Matt tends to get a little nervous. Matt demonstrates, is demonstrably more nervous. Matt has self-esteem issues. He would get a little bit too nervous. Musicianship is really subjective. He cared too much. It went against him. It got in the way of his performance. Matt would have been a good employee. Mr. Harrell was a student of his own expert, Mr. Barrett, and he was clear in his testimony for the jury, he was rooting for him. He wanted him to get the job. He thought he would be a good employee. He said he had performance anxiety problems. He repeated, he cared too much. Mr. Harrell underrates himself, and it affects his performance. He felt bad about his performance. He finished third in the auditions, and he was a good friend of the plaintiff, and he was, as I say, rooting for him. The jury heard all of that, and that's the expert for the plaintiff, who obviously, again, in a subjective way, is saying his performance wasn't up to the caliber of the other gentleman, and therefore, he didn't get the job. He felt badly about it. I think Mr. Barrett, his expert, said he felt badly about it. But feeling badly about it is not discrimination. Being subjective about it is not discrimination. Being subjective can be discriminatory. The case law says that. I agree. It could be discriminatory. I guess you'd have to look into the heart of Mr. Mahi. And so we're in how does, how does this issue come up? I mean, everybody's talking about this as if we're just sort of sitting there and deciding whether something could be discrimination or could not be. Clearly, it could be. But this comes up on a motion, denial of a motion for new trial. Is that right? Well, he, he, on the motion for new trial. Well, I mean, how does this issue come up? We're not here on summary judgment. We're here on the denial of a motion for new trial. Is that right? We're here on the denial of a motion for new trial, and he's also asking for a mistrial. He's asking for a denial of a motion for mistrial. Well, I mean, so the standard, the applicable standard on a denial of a motion for new trial is abusive discretion, right? Abusive discretion and, I believe, insufficiency of evidence. He does also make a claim of insufficiency of the evidence, I think. Right. Yeah. But it's not just sufficiency of the evidence. Isn't the standard whether the record contains no evidence that could support the verdict? The record is replete with evidence that supports the verdict. Well, okay. Because, I mean, you're arguing it as if we were here on summary judgment. That's correct. What is the evidence in the record that supports the jury's verdict? The pivotal issue is whether or not the decision to not hire an admittedly qualified individual was for a reason, the reason articulated other than race. That's the pivotal issue in this case. So what in the record supports the jury's verdict that there was a reason given other than race? What is there in the record that supports that? Performance. Okay. Performance. What, since that the, on the judgment as a matter of law, was there one made at the close of evidence? There was by the city. There was not by the plaintiff. The plaintiff raised that issue after the jury had returned its verdict. All right. How does that affect plaintiff being able to claim that at this point, or appellant being able to claim that at this point? Well, I think Judge Aspin addressed that in his order of April 20th, 06, and he said that he's precluded. Precluded from what? Precluded from raising issues about the sufficiency of the evidence. Any other questions? I'd like to direct you to the defendant's record, actually, and it's page 238. And I'm asking Mr. Mahi about his ratings. And down at line 20, he says, as indicated on my tally sheets, that because of the indications of nervousness and problems of conviction in his performance, I felt that he could not fulfill the position of the soloist. And I believe that I've heard Mr. Harrell on many other musical situations which we have discussed. Well, those other musical situations obviously then did factor into his decision. The statement about nervousness is a subjective decision. That's just like saying I don't like, you know, the color of your dress or something like that. Well, it is subjective, but obviously for performers that I, you know, that people can have a certain level of ability, and then there's the performance. And some people say if a person has stage fright, but they're a great performer when no one's looking, would that be, isn't that a factor as to whether you would select someone? Or some people can have a certain amount of ability, but it's really about the performance and they get very nervous and they fall apart when they have to perform publicly. Why isn't that something that would be appropriate to consider when you're deciding who should be a soloist? How will they perform under pressure? How will they perform in front of other people? Because the ratings here, the objective ratings show that he was clearly qualified and very, very close within three points of Mr. Howell who was offered the position. And to be quite honest, I'm nervous here talking in front of you even though I've been trying cases for 31 years. The audition process is a stressful process, but when you look at the facts, Mr. Harrell was the only one who was serious about the job. The other two people turned it down. The second person, Mr. Howell, was a student. He took the audition for the purpose of having the experience of having taken an audition. The other person, Mr. Ventura, turned down the job because he didn't pay nearly enough money. He would have taken an $1,100-a-month cut in pay to do so. Counsel, let me ask you this. What's your response to opposing counsel's argument that you don't even have the ability to challenge the denial of a motion for new trial because there was no motion for judgment as a matter of law made at the end of the trial? My response is the Aubrey v. Johnson case, and I'm going back to the motions in limine that were granted improperly, which prevented us from having a full trial in the first place, because we weren't able to present the full history of the Royal Hawaiian Band and its 100-year practice and policy. But how did that prevent you from making a motion, JMOL, at the close of evidence? How did any of that prevent you? All you have to say is I make a motion for JMOL at the close of evidence. And I believe I did. Where in the record is that? I'd have to find that. That would be on the last day of the last day of the trial of the last day of the presentation of evidence, obviously. And I would argue that the Johnson case establishes that those errors which occurred before the trial are still grounds for reversing this decision because the trial was clearly unfair at its inception. And we haven't even gotten into the fact that there were no blacks on the jury, no blacks on the jury panel, and that when we showed up for trial, there were six people sitting in the jury, and I had to object to where did these people come from and how did they get placed on the jury panel when we haven't had any random selection going on? Mr. Harrell was clearly qualified, and the expert clearly stated that he was qualified, that those issues of nervousness were common to all of the applicants, and they did not prevent Mr. Harrell from producing a performance which was very good and certainly sufficient to qualify him for this position, as all of the raters determined. Thank you. I would say this is a case like you give out a contract for, say, ice cream, and some vanilla shows up, some chocolate shows up, some strawberry shows up, well, strawberry and chocolate turn down the job, but then they don't offer it to the vanilla because, well, the vanilla was too nervous. But it's still ice cream. He's still a qualified musician. And the history of the discrimination with regard to this city department is outrageous, over 100 years long, and we were prevented from presenting all of it. And that was wrong. Thank you.
judges: Rymer, Rawlinson, Callahan